UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| JOSE R. PADILLA,<br><br>                  Plaintiff,<br><br>v.<br><br>DONALD RUCK, JENNIFER WOLLERT,<br>BARBRA SULLIVAN, LISA TETZLAFF,<br>LINDA LEITH, and KRISTIT O'CONNELL,<br><br>                  Defendants. | Case No. 14-CV-98-JPS<br><br><br><br>ORDER |

The plaintiff filed this case on January 30, 2014, after which the Court screened his complaint. (Docket #1, #8). The plaintiff complains that the defendants refused to replace his state-issued eyeglasses, so the Court allowed him to proceed on an Eighth Amendment deliberate indifference claim. (Docket #8 at 3). The case progressed, but the court ultimately determined that it should attempt to recruit counsel, due to the plaintiff's difficulties with the English language. (*See* Docket #36). Accordingly, the Court stayed the action while it attempted to recruit counsel.

The Court has reached out to five separate attorneys in an effort to recruit counsel willing to accept the case. One of those attorneys seemed to be interested in taking the case and spoke with the plaintiff, but the plaintiff filed a letter with the Court complaining about his perception of that attorney's telephone demeanor. (*See* Docket #38). Since that time, none of the attorneys that the Court has contacted have agreed to accept the case.

Of course, as a civil litigant, the plaintiff has no automatic right to court-appointed counsel. *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997). However, under 28 U.S.C. § 1915(e)(1), the "court may request an attorney

to represent any person unable to afford counsel." The Court should seek counsel to represent the plaintiff if the plaintiff: (1) has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (*en banc*)). The Court's decision, here, was practically necessary given recent Seventh Circuit decisions. Apparently, the Court ought not consider the assistance of a jailhouse lawyer for the plaintiff, *Henderson v. Ghosh*, 755 F.3d 559 (7th Cir.); *see also Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014), in spite of the fact that he has one (*see* Docket #34, #35). The Court's decision was based in large part on the plaintiff's difficulty with the English language, which may have been substantially lessened by the assistance of his jailhouse lawyer; but because the Court cannot consider that, it did not, and so determined that recruitment of counsel was appropriate—or at least an attempt to do so.

But, even after attempting to recruit counsel, the Court has had extreme difficulty doing so. This case is in a curious situation because multiple factors have combined to make recruitment of counsel in this case difficult to achieve. First is the plaintiff's having filed a negative letter with the Court after being contacted by the attorney who was most likely to undertake representing him. (Docket #38). Indeed, it is difficult to recruit counsel—who, in this district, are not required to serve and do so entirely out of the goodness of their professional calling—for a difficult plaintiff.

Second, and more important, is the fact that the Court must act to preserve its resources. As already mentioned, this district does not have a

compulsory *pro bono* requirement for the attorneys that practice before it.[1] So, the Court finds that it often has to return to the same well: larger firms, which allow their younger associates to work the case to obtain practical litigation experience. That practice is well and good–indeed laudable, but the district has been drawing upon that limited resource substantially in recent months, and the Court hopes to avoid tapping out that valuable resource.

So, in a case like the one before the Court today, with exceptionally limited potential for compensatory damages, it becomes readily apparent that the Court balance the preservation of the Court's resources with the plaintiff's need for counsel. As Judge William Griesbach of this district has recently observed, the Second Circuit generally considers this dilemma by determining whether a litigant's position is "likely to be of substance." *See, e.g., Rivera v. Kettle Moraine Correctional Inst.*, No. 14-CV-0006, 2014 WL 2875897 at *4–*6 (E.D. Wis. June 24, 2014) (citing, in relevant part, *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170 (2d Cir. 1989)). *See also Kennedy v. Huibrgtse*, No. 13-CV-0004, 2014 WL 4924662 at *13–*15 (E.D. Wis. Sept. 30, 2014) (citing *Cooper*, 877 F.2d 170).

In *Cooper*, the Second Circuit pointed out that the time of *pro bono* attorneys is a resource that "is available in only limited quantity," meaning

---

[1]And, even though it would certainly make the work of the Court easier to be able to force attorneys to represent otherwise-*pro se* litigants, the Court is reluctant to find that such a rule would be a wise exercise of the Court's discretion in such matters. *Pro bono* representation of litigants who would otherwise proceed *pro se*—particularly prisoners—involves substantial burdens on counsel: time pressures, causing reduction in the capacity to complete work related to the agreements for fee paying clients, which hits solo practitioners particularly hard; often-difficult clients; and budget constraints, imposed by the district to protect its *pro bono* fund, among many other issues. The thought of forcing attorneys to take on those burdens is most troublesome.

that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper*, 877 F.2d at 172. Perhaps the plaintiff in this case is not entirely undeserving—the Court has already determined that his claim survived screening—but recruiting counsel for a claim with practically no compensatory damage potential would seem to be a waste, potentially depriving other litigants in more substantial cases of representation. Of this, the *Cooper* court observed:

> The homily as to accessibility of the courts to rich and poor alike also has weaknesses. It is simply not true that the suits of individuals are generally financed by their personal means. Litigation long ago became so expensive that it exceeds the means of all but a tiny fraction of the population. As a general proposition, the availability of counsel for claims by individuals is determined less by the wealth of the claimant than by the merits of the claim. The vast majority of litigation on behalf of personal claimants is financed initially by lawyers who accept the representation for a contingent fee in the expectation of being rewarded by a share of the winnings. In addition to the contingency arrangement, there are statutes, including 42 U.S.C. § 1988, which guarantee pay to a prevailing lawyer at the expense of the adversary. Under these statutes, if the claim will prevail, the lawyer will be well paid without expense to the client, even though the lawsuit may involve only matters of principle without monetary award. Thus, in society at large, it is not so much the comparative wealth of potential claimants that determines whether they can succeed in obtaining the services of counsel, but the likely merits of their claim. If the claim has likely merit, a lawyer can take it with considerable confidence in being reasonably paid—sometimes very well paid.

*Id.* at 173. So, in this case, where an attorney apparently was reluctant to take the case due to the lack of potential for damages (*see* Docket #38), and no

attorney agreed to take the case in spite of 42 U.S.C. § 1988, the Court is reluctant to tap further into the valuable resources of firms willing to take these cases *pro bono.* At some point, it seems that market pressures should govern: where a lawyer would not agree to accept the case from a client who walked in off the street, why should a litigant who first appeared *pro se* be entitled to representation?

The Seventh Circuit, however, has previously rejected this market-based approach. *See McKeever v. Israel*, 689 F.2d 1315, 1323–25 (7th Cir. 1982) (Posner, J., dissenting) ("Encouraging the use of retained counsel thus provides a market test of the merits of the prisoner's claim. If it is a meritorious claim there will be money in it for a lawyer; if it is not it ought not to be forced on some hapless unpaid lawyer."); *see also Merritt v. Faulkner*, 697 F.2d 761, 768–69 (7th Cir. 1983) (Cudahy, J., concurring) ("I am not prepared to consign to the verdict of the marketplace the issue of prisoner representation.").

So, it may be error for the Court to rely entirely on the market theory. But, in this case, the Court finds that it has no other choice. Aside from the plaintiff's apparent difficulty with potential counsel,[2] the Court simply cannot expend further resources in continuing to contact counsel or in

---

[2]And, on this point, the Court is left to ponder whether the plaintiff's dissatisfaction with potential counsel may, itself, be enough to require him to proceed without counsel. Apparently what is required in this circuit is that district courts "recruit" counsel, rather than "appoint" counsel. *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013) (taking to task district court for use of the word "appointment" rather than "recruitment"). The Court further questions whether there should be some practical distinction: whether, where it lacks authority to appoint counsel, the Court can achieve its prerogative by actively having attempted to recruit counsel, which it certainly did, and which may have been hampered by plaintiff's expression of frustration with potential counsel.

utilizing the already-limited resources offered by the large law. The Court must preserve these limited resources, and thus require that the plaintiff continue on without an attorney.

This does not mean that the plaintiff is left without the ability to obtain counsel on his own. If he can secure counsel—who may agree to represent him *pro bono*, such potential counsel may wish to contact the Court for further information—he remains free to proceed with that counsel. If the plaintiff is unable to secure an attorney willing to take his case, then he may proceed without counsel, in which case he would have to proceed on his own or with his jailhouse lawyer.

In any event, the Court will lift the stay that it previously imposed in this case. The parties should, therefore, proceed with discovery and will be expected to abide by the terms of the original scheduling order. (Docket #9). The only changes to that order will be to the dates, which the Court provides, below.

Accordingly,

IT IS ORDERED that the previously-imposed stay in this case (Docket #36) be and the same is hereby LIFTED, and the plaintiff shall proceed without Court-recruited counsel; and

IT IS HEREBY ORDERED that the original scheduling order (Docket #9) shall remain effective, but its dates be and the same shall be AMENDED as follows:

| | |
|---|---|
| Discovery due: | February 2, 2015 |
| Summary Judgment motions due: | March 2, 2015 |
| Interim Report on Settlement Progress due: | February 23, 2015 |
| Final Report on Settlement Progress due: | March 23, 2015 |

Single Joint Final Pretrial Report due:          June 4, 2015

Motions *in limine*, etc., due:                   June 3, 2015

Final Pretrial Conference:                        June 9, 2015, 8:30 a.m

Jury Trial:                                       June 15, 2015, 8:30 a.m.

Dated at Milwaukee, Wisconsin, this 24th day of October, 2014.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge